## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BYATA WILDER, FRANK RIZZO, AND ELIO IPPOLITO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROMA FOOD ENTERPRISES, INC.; ROMA OF NEW JERSEY; PERFORMANCE TRANSPORTATION, LLC d/b/a PERFORMANCE FOOD GROUP;  PERFORMANCE FOODSERVICE – AFI; VISTAR CORPORATION; JOHN DOES 1-10, fictitious names for persons or entities whose present roles and identities are unknown; and ABC BUSINESS ENTITIES 1-10, fictitious names for entities whose present roles and identities are unknown,<br><br>Defendants. | Civil Action No. 2:14-cv-8123 (JLL)(JAD) |

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND

---

PARIS ACKERMAN & SCHMIERER LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-6667

MEYERS FRIED-GRODIN, LLP
520 Speedwell Avenue, Suite 210
Morris Plains, NJ 07950
(973) 944-8069

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ......................................................................................... ii

I.      REQUIREMENTS FOR REMAND PURSUANT TO 28 U.S.C. § 1447 ..........................1

II.     THE STANDARDS FOR REMOVAL AND REMAND .....................................................1

III.    DEFENDANTS HAVE NOT AND CANNOT MEET THEIR BURDEN OF
        PROVING THE REQUISITE JURISDICTIONAL AMOUNT ........................................4

IV.     DEFENDANTS CANNOT MEET THEIR BURDEN OF PROVING THAT
        ALL OF THE DEFENDANTS ARE CITIZENS OF FOREIGN STATES ......................7

        A.  The Evidence Shows that Performance Foodservice Is a New Jersey Citizen ..............8

            1.  Performance Foodservice Holds Itself Out as Being an Independent
                Entity that Is in New Jersey ..................................................................................9

            2.  Evidence Shows that Performance Foodservice Holds Itself Out as
                Being an Independent Entity which Has Its Leadership in New Jersey ..........10

            3.  Evidence Shows that Performance Foodservice Has Its Own Human
                Resources Leadership in New Jersey..................................................................11

            4.  The NJ Department of Labor Addressed Wage & Hour Claims to
                Performance Foodservice and Its Executives in New Jersey...........................11

        B.  There Is Evidence that Roma Still Exists and Is a New Jersey Citizen.......................12

V.      IF THE COURT DECLINES TO REMAND NOW, THEN PLAINTIFFS ARE
        ENTITLED TO DISCOVERY ..........................................................................................13

VI.     DEFENDANTS' IMPROPER REMOVAL JUSTIFIES AN AWARD OF
        PLAINTIFFS ATTORNEY'S FEES AND COSTS........................................................14

CONCLUSION....................................................................................................................15

i

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (U.S. 1996) ...................................................................1

*Deluca v. Allstate New Jersey Ins. Co.*, 2011 WL 3794229 at *2

(D.N.J., August 24, 2011)(WJM) ...................................................................................................9

*Flail v. Travelers Companies*, 1998 WL 709296 at *3 (E.D.Pa. Oct.6, 1998)...............................5

*Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006) ..............................13

*Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 175 L. Ed. 2d 1029 (2010) ..........................8

*Ilan-Gat Engineers, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 239 (D.C. Cir. 1981) ...................14

*Judon v. Travelers Property Cas. Co. of Amer.*, 773 F.3d 495, 500-506 (3d Cir. 2014) ..........2,3,6

*Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009)..............................................2

*Lauchheimer v. Gulf Oil*, 6 F.Supp.2d 339, 346 (D.N.J.1998) ........................................................5

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711 (2005)...............................15

*Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287 (3d Cir. 1998)..............................................11

*Mints v. Educational Testing Service*, 99 F.3d 1253, 1258 (3d Cir. 1996)....................................14

*Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993)....................................14

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003).........................................6

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978)...........................................14

*Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1044-45 (3d Cir. 1993) .....................................5

*Sacchi v. ABC Financial Services, Inc.*, 2014 WL 4095009 (D.N.J. 2014) ....................................2

*Samuel-Bassett v. Kia Motors America. Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) ....................2, 3, 4

*Samuel-Bassett v. Kia Motors America. Inc.*, 143 F.Supp. 2d 503 (E.D. Pa. 2001)....................... 6

ii

*Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)........................................................................................................2

*Uriarte v. Outback Steakhouse*, 2011 WL 4020953 *2 (D.N.J., September 8, 2011).....................2

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) ........................................................6, 7

*Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921)................................................3, 7

*Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (U.S. 1998) ......................................................1

## STATUTES

28 U.S.C. §§ 1331, 1332, 1441 and 1446..................................................................................1, 2

28 U.S.C. § 1447.................................................................................................................................1

28 U.S.C. § 1447(c) ...........................................................................................................................9

N.J.S.A. 34:11-56a4............................................................................................................................4

N.J.S.A. 56:8-19..................................................................................................................................5

§ 1447(c) ............................................................................................................................................1

28 U.S.C §1331(a) ..............................................................................................................................2

28 U.S.C. §1332(a) .........................................................................................................................2, 7

28 U.S.C. 1332(d)(2)(A).....................................................................................................................2

## OTHER

**Page(s)**

Punitive Damages Act, N.J. Stat. Ann. §2A:15-5.09.........................................................................5

Plaintiffs, Byata Wilder, Frank Rizzo and Elio Ippolito, individually, and on behalf of all others similarly situated ("Plaintiffs), by and through their counsel, Paris Ackerman & Schmierer LLP and Meyers Fried-Grodin LLP, hereby respond to the defendants, Roma Food Enterprises, Inc.; Roma of New Jersey, Performance Transportation, LLC d/b/a Performance Food Group; Performance Foodservice – AFI and Vistar Corporation ("Defendants"), notice of removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446 with this motion for remand to State Court pursuant to 28 U.S.C. § 1447.

## I.  <u>REQUIREMENTS FOR REMAND PURSUANT TO 28 U.S.C. § 1447.</u>

In accordance with 28 U.S.C. § 1447, Plaintiffs have filed the within motion to remand on the basis of lack of subject matter jurisdiction.

28 U.S.C. § 1447 provides, in pertinent part:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

Pursuant to 28 U.S.C. § 1447, Plaintiffs motion based on lack of subject matter jurisdiction may be made at any time before final judgment. *See*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (U.S. 1996); *see also*, *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (U.S. 1998) (holding that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")  As such, this motion is timely under § 1447(c).

## II.    <u>THE STANDARDS FOR REMOVAL AND REMAND.</u>

Federal district courts have original jurisdiction on the basis of diversity of citizenship where: (1) the matter in controversy exceeds the sum or value of $75,000; and (2) there is

diversity of citizenship between each plaintiff and each defendant in the case. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009) citing 28 U.S.C. §1332(a). Alternatively, federal district courts have original jurisdiction over class actions under the Class Action Fairness Act ("CAFA") codified as 28 U.S.C. 1332(d)(2)(A). CAFA relaxes the strictures of traditional diversity jurisdiction and constitutes a separate basis for removal of class action matters. *See Sacchi v. ABC Financial Services, Inc.*, 2014 WL 4095009 (D.N.J. 2014).

In the case at bar, however, the Defendants have chosen to remove this case based *solely* on traditional diversity jurisdiction pursuant to 28 U.S.C. §1332(a) and *not* CAFA. Thus, the proper inquiry for this Court is to determine whether the Defendants have established the requirements of an amount-in-controversy exceeding $75,000 and complete diversity.

Removal is governed by 28 U.S.C. §§ 1441 and 1446. It is well settled that "[t]he moving party bears the burden of demonstrating the appropriateness of removal." *Uriarte v. Outback Steakhouse,* 2011 WL 4020953 *2 (D.N.J., September 8, 2011)(remand granted) citing *Samuel-Bassett v. Kia Motors America. Inc*., 357 F.3d 392, 396 (3d Cir. 2004). The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id*. citing *Steel Valley Auth. v. Union Switch and Signal Div*., 809 F.2d 1006, 1010 (3d Cir. 1987)(citations omitted).

Just last month, the Court of Appeals for the Third Circuit described and analyzed the various jurisdictional tests in CAFA removal actions and traditional diversity jurisdiction removal actions under 28 U.S.C §1331(a). *See Judon v. Travelers Property Cas. Co. of Amer.*, 773 F.3d 495, 500-506 (3d Cir. 2014). There, the Court explained that the jurisprudence in this Circuit establishes two distinct frameworks to analyze the burden of proof to be applied. These tests were set out in a pre-CAFA decision, which reconciled two United States Supreme Court

decisions. *See Judon*, 773 F.3d at 500 (citing *Samuel-Bassett v. Kia Motors America. Inc*., 357 F.3d 392, 396 (3d Cir. 2004).

Under this jurisprudence, this Court should apply either: (i) the "McNutt/Samuel-Bassett framework where a challenge to the amount in controversy has been raised but 'no evidence or findings in the trial court addressed that issue'"; or (ii) the "Red Cab/Samuel-Bassett framework where the jurisdictional facts are not contested." *Id.* at 501. Furthermore, "[i]f a removal is effected, the plaintiff may, by a motion to remand….take issue with the statements in the petition [for removal]. If he does, the issue so arising must be heard and determined by the District Court, and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding." *Id.* citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921).

Based on the foregoing principles of law, the Plaintiffs respectfully submit that the McNutt/Samuel-Bassett framework is the applicable test for the case *sub judice* because Plaintiffs take issue with the statements made in Defendants' Notice of Removal and challenge both their allegations related to the amount in controversy and diversity of citizenship.

As shall be set forth more fully below, Plaintiffs contend that: (i) the separate and distinct claims of the three individual Plaintiffs cannot be aggregated together and/or with the putative class members thereby failing to satisfy the amount-in-controversy; and (ii) complete diversity does not exist. Because the Plaintiffs have challenged these jurisdictional facts in an appropriate manner, the Defendants, as the party alleging jurisdiction, must support them by competent proof and provide this Court with extrinsic evidence supporting their claims that: (i) the amount in controversy exceeds the jurisdictional amount of $75,000; and (ii) complete diversity exists.

3

### III.     DEFENDANTS HAVE NOT AND CANNOT MEET THEIR BURDEN OF <u>PROVING THE REQUISITE JURISDICTIONAL AMOUNT.</u>

In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court.  *See Samuel-Bassett v. Kia Motors America. Inc.*. 357 F.3d 392, 398 (3d Cir. 2004).   In instances where a complaint's *ad damnum* clause states categories of damages versus a specific amount of monies, the Court must translate these categories into monetary sums because the diversity statute speaks in terms of dollars.  *Samuel-Bassett,* 357 F.3d at 399.

In the case at bar, each individual plaintiff seeks recovery of lost wages due to the Defendants use of a uniform policy of compensation referred to as "piece, mile, stop."  *See* ¶ 45 - 47 of the Plaintiffs Complaint annexed as Exhibit A to the Notice of Removal ("Compl.)   Each Plaintiff avers that under this "piece mile stop" compensation policy, the Defendants failed to comply with the New Jersey Wage and Hour law ("NJWHL"), which specifically provides that an employer shall pay:

> $7.15 per hour for 40 hours of working time in any week and 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week.
>
> N.J.S.A. 34:11-56a4.

In addition to failing to comply with its obligation to pay overtime, the Defendants' compensation policy also failed to comply with its obligation to pay minimum wage.  *See* Compl., ¶ 45 – 47.  Thus, the Plaintiffs seek economic damages for the two separate violations of the NJWHL as well as the corresponding breach of the covenant of good faith and fair dealing. *See* Compl.

To be clear, however, the Plaintiffs do **not** seek redress under either: (i) the New Jersey Consumer Fraud Act, which requires courts to award plaintiffs threefold the actual damages

resulting from a violation under N.J.S.A. 56:8-19; or (ii) the Punitive Damages Act, N.J. Stat. Ann. §2A:15-5.09.

Nevertheless, the Plaintiffs do seek "reasonable attorneys' fees and the costs of this action." *See* Compl. at pg. 11, ¶ f. Although this demand is customary as part of any *ad damnum* clause utilized in New Jersey state court practice, the Plaintiffs respectfully submit that a claim for an unspecified amount of attorneys' fees does not satisfy the jurisdictional minimum. Indeed, as the Third Circuit Court of Appeals has explained "[the amount in controversy requirement] must be narrowly construed so as to not frustrate congressional intent to keep the diversity caseload under some medium of control." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1044-45 (3d Cir. 1993). Moreover, courts have routinely rejected the argument that a plaintiff could meet the amount in controversy by relying primarily on the award of attorneys' fees, rather than compensatory damages. *See, e.g.*, *Lauchheimer v. Gulf Oil*, 6 F.Supp.2d 339, 346 (D.N.J.1998) (holding that amount in controversy could not be satisfied by potentially excessive award of attorneys' fees where plaintiff, if successful, would receive very small compensatory damages); *Flail v. Travelers Companies*, 1998 WL 709296 at *3 (E.D.Pa. Oct.6, 1998) (holding that amount in controversy could not exceed $75,000 by aggregating potential attorneys' fees where compensatory damages could not exceed $5,000). Thus, Plaintiffs respectfully submit that this "category of damages" does not satisfy the jurisdictional amount.

For all of the aforementioned categories of damages, the Defendants relegate to a single paragraph an "analysis" of the amount in controversy in its Notice of Removal. *See* pg. 4 at ¶ d. Specifically, the Defendants summarily and *incorrectly* assert that "given the relief potentially available to these Plaintiffs, as well as any other class members, particularly unpaid wages, unpaid wages, unpaid overtime wages, and attorneys' fees, Defendants submit that the amount in

5

controversy exceeds the jurisdictional amount of $75,000." *See* pg. 4 at ¶ d.  Needless to say, the Plaintiffs contend that Defendants' conclusory assertion falls woefully short of satisfying its burden of showing that subject matter jurisdiction exists in this matter.

*First*, the relief potentially available to the other class members and drivers has absolutely no bearing on this analysis.  Specifically, the rule has long been that separate and distinct claims of multiple plaintiffs cannot be aggregated to satisfy the amount-in-controversy requirement, either in cases brought originally in federal court or in cases removed from state court.  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) (concluding that class members could not aggregate unjust enrichment claims); *Samuel-Bassett v. Kia Motors America, Inc.*, 143 F. Supp. 2d 503 (E.D. Pa. 2001) (noting that each class action plaintiff had to independently meet the amount-in-controversy requirement, to satisfy diversity jurisdiction requirements).

*Second*, the Defendants have given this Court absolutely no basis for determining the amount of wages that are potentially available to each individual Plaintiff.  For instance, the Defendants could have annexed an affidavit from a company representative with first hand personal knowledge of the actual compensation paid to each Plaintiff along with documentary evidence thereby giving this Court a basis for determining the wages paid and owed to each Plaintiff.  Because the Plaintiffs have raised this jurisdictional challenge on the within motion for remand, however, the Defendants must now support this assertion with jurisdictional facts by submitting extrinsic evidence in its opposition to this motion to enable this Court to hear and determine whether it has jurisdiction over this matter.  *See Sam v. Travelers Property Cas. Co. of Amer.*, 773 F.3d 495, 502 (3d Cir. 2014) citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921).

In sum, the Defendants, as the party alleging jurisdiction, must take and carry the burden of proof to justify its allegations "that the amount in controversy exceeds the jurisdictional amount of $75,000." *See* Notice of Removal at pg. 5.  Moreover, the Defendants must submit admissible extrinsic evidence proving that ***each*** class action plaintiff independently meets the amount-in-controversy requirement to satisfy diversity jurisdiction requirements.  *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002).

Based upon the Defendants' conclusory assertions contained within its Notice of Removal, the Plaintiffs respectfully submit that Defendants have fallen woefully short of satisfying its burden of showing that the instant lawsuit satisfies the requisite amount in controversy for this Court to have subject matter jurisdiction under 28 U.S.C. 1332(a).  Thus, the Plaintiffs respectfully request that this Court remand the instant lawsuit back to state court.

### IV.  DEFENDANTS CANNOT MEET THEIR BURDEN OF PROVING THAT ALL OF THE DEFENDANTS ARE CITIZENS OF FOREIGN STATES

In addition to failing to carry their burden relating to the requisite amount in controversy, the Defendants likewise fail to prove that there is diversity of citizenship between each plaintiff and each defendant in this case.

In their removal papers, Defendants rely upon the conclusory statements of their legal counsel to support their factual assertions that all of the Defendants are citizens of other states. By failing to provide competent, record evidence to prove their assertions, their attempt to remove this case was improper.

To begin with, the assertions of defense counsel in the removal papers are contradicted by Defendants' public filings.  This raises serious concerns about the legitimacy of the arguments presented by Defendants in support of removal.  More specifically, the Notice and Petition for Removal states that Performance Food Group, Inc. has a principal place of business

7

in Richmond, VA "and does not have a principal place of business in New Jersey." See Defendants' Removal Petition at ¶8(b) at pp. 3-4. This is flat-out contradicted by the Business Entity Status Report for Performance Food Group, Inc., dated January 7, 2015. [1] The company's annual report (filed on September 28, 2014), lists the principal business address as: 301 Heron Drive, Swedesboro, NJ, 08085. Ex. 22 to Meyers Dec. The inconsistency between this document, and what Defendants state in their removal papers, reflects that something has been misstated (either to the Court or to the State of New Jersey). If the information in the annual report is correct, then Performance Food Group's nerve center is surely in New Jersey. Either way, the existence of this serious discrepancy precludes Defendants from meeting their burden of establishing complete diversity.

Next, as discussed in Section A, below, the evidence regarding the Defendants, and their nerve center, shows that **not** all of the Defendants are citizens of foreign states. Additionally, as discussed in Section B, below, Roma – contrary to assertions in Defendants' removal application – is an extant and separate business entity in New Jersey. Therefore, this case must be remanded to state court.

**A. <u>The Evidence Shows that Performance Foodservice Is a New Jersey Citizen</u>**

In determining the citizenship of corporate parties, courts employ the "nerve center" test, established by *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 175 L. Ed. 2d 1029 (2010). Usually, a corporation's nerve center will be "the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control and coordination, *i.e.* the 'nerve center,' and not simply an office where the corporation holds its board meetings . . ." *Deluca v. Allstate New Jersey Ins. Co.*, 2011 WL 3794229 at *2 (D.N.J.,

---

[1] "Meyers Dec." refers to the concurrently submitted Declaration of Jonathan Meyers, Esq.

August 24, 2011)(WJM).  In *Deluca*, the District Court remanded the case because a corporate defendant that had a presence in New Jersey failed to provide enough evidence that its nerve center was in another state.  In making its decision, that Court noted the presence of middle management and human resources employees in New Jersey.  *Ibid*.

Here, Defendants have not presented any evidence (beyond conclusions of their counsel), that all of the Defendants are citizens of other states.  On the other hand, publicly-available records strongly indicate that: (i) Performance Foodservice - AFI ("Performance Foodservice") is a separate entity from Performance Food Group, Inc.; and (ii) it has its nerve center in New Jersey.

### 1. Performance Foodservice Holds Itself Out as Being an Independent Entity that Is in New Jersey

Performance Foodservice is held out to the world (and to employees and prospective employees) as being an independent entity.  On the Performance Food Group website, Performance Foodservice is described as one of several "foodservice distributors" in the Performance Food Group Family.  *See* Exhibit 17 to Meyers Dec.  On that website, Performance Foodservice has its own webpage, which identities its address as being at 301 Heron Drive, Swedesboro, NJ 08085.  Exhibit 18 to Meyers Dec.  (at first page of the exhibit).  The webpage further identifies that business entity as "Performance Foodservice **New Jersey**," thereby conveying to the world that Performance Foodservice is a New Jersey entity.  Exhibit 18 to Meyers Dec. (at last page of the exhibit)(emphasis added).  Notably, this Swedesboro, NJ address is the same address listed on Performance Food Group as its principal place of business.

**2. Evidence Shows that Performance Foodservice Holds Itself Out as Being an Independent Entity which Has Its Leadership in New Jersey**

The leadership structure that Defendants hold out to the world indicates that Performance Foodservice has its own leadership (including its own President, C.E.O. and Human Resources). Exhibit 19 to Meyers Dec.

Moreover, public information indicates that Performance Foodservice's executives (both current and former) work in New Jersey. For example, the President of Performance Foodservice has a Linkedin page which reflects both that: (i) Performance Foodservice is an independent entity; and (ii) he lives and works in New Jersey. Exhibit 1 to Meyers Dec. Likewise, Vice-President level executives have Linkedin pages indicating that they work for Performance Foodservice in New Jersey (or the Greater New York City area which encompasses New Jersey). Exhibits 2-5 to Meyers Dec.[2]

Even former executives indicate that they worked for Performance Foodservice in New Jersey in resume and Linkedin-page form. For example, a former C.F.O. reflects that he worked for Performance Foodservice in New Jersey. Exhibits 8-9 to Meyers Dec. A former Human Resources employee indicates the same. Exhibit 10 to Meyers Dec. A variety of other former New Jersey executive or middle management (and human resources) employees also reflect that they worked for Performance Foodservice. Exhibits 11-16 to Meyers Dec.

It is clear that many current and former employees treat Performance Foodservice as an independent entity, and that they believe that they worked for that entity in New Jersey. This compels a conclusion that, in fact, Performance Foodservice is an independent entity and its leadership is in New Jersey.

---

[2] What appear to be middle-management employees also identify themselves as working for Performance Foodservice and their Linkedin pages indicate that they work in New Jersey. Exhibits 6-7 to Meyers Dec.

### 3. Evidence Shows that Performance Foodservice Has Its Own Human Resources Leadership in New Jersey

There is evidence that Performance Foodservice has its own Human Resources leadership in New Jersey.  Records show that the current Vice-President of Human Resources for Performance Foodservice, Kathy Stevens, is in New Jersey.  Exhibits 25 to Meyers Dec.

Additionally, as of January 21, 2015, there were a variety of job openings posted in Swedesboro, New Jersey (the town listed for Performance Foodservice, as its address, on its webpage).  Included among the positions open are "HR Director" and "Regional HR Manager." Exhibit 21 to Meyers Dec.

### 4. The NJ Department of Labor Addressed Wage & Hour Claims to Performance Foodservice and Its Executives in New Jersey

When the New Jersey Department of Labor ("NJDOL") investigated (and assessed penalties) for wage and hour violations directed at Performance Foodservice, the NJDOL addressed the company in New Jersey.  See Exhibits 23 & 24 to Meyers Dec.  The NJDOL also included Performance Foodservice's President, Michael Irwin, in the NJDOL's Final Order.  His address was listed as being in New Jersey.  Exhibit 23 to Meyers Dec. at p. 3.  (Even today, President Irwin indicates that he works for Performance Foodservice in New Jersey.  See Exhibit 1 to Meyers Dec.).  Performance Foodservice's current Vice-President of Human Resources in New Jersey, Kathy Stevens, interacted with the NJDOL investigator and signed at least one document related to a wage & hour investigation.  Exhibit 24 to Meyers Dec. at pp. 3-4.

In sum, the evidence reflects not only that Performance Foodservice acts as an independent entity – and third parties, such as the NJDOL, treat Performance Foodservice as an independent entity.  Note that when an entity is a subsidiary it is typically examined separately from the parent for diversity purposes. *Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 292-

11

293 Fn 7. (3d Cir. 1998). In *Mennen*, the Third Circuit Court of Appeals emphasized that it is more important to examine the substance of where business activity actually takes place, over corporate formalities. *Ibid.* Here, if Performance Foodservice is not an actual subsidiary (or other separate affiliate) of Performance Food Group, the objective facts indicate that Defendants treat Performance Foodservice as being separate and Performance Foodservice does, in fact, act as a separate entity.

Furthermore, the evidence also shows that Performance Foodservice's executive, managerial and human resources leadership work in New Jersey. It stands to reason then, that New Jersey is where the direction and control of the business takes place. That is where Performance Foodservice's nerve center is. Consequently, the evidence indicates that at least one of the Defendants is a New Jersey citizen and complete diversity is absent. Thus, this case should be remanded, just like the *Deluca* case was remanded (which had similar evidence regarding the nerve center).

### B. There Is Evidence that Roma Still Exists and Is a New Jersey Citizen

Defendants' removal petition (on page 1, footnote 1), asserts that Roma Food Enterprises, Inc. ("Roma") does not exist. However, recent court filings reflect that Roma does exist. To begin with, a 2011 removal application in the United States District Court for the Eastern District of Louisiana (asserting diversity of citizenship) states that Roma **does** exist and **is a New Jersey corporation**. See Exhibit 26 to Meyers Dec. at p. 2, ¶ 5.

Next, New Jersey Superior Court records show that as recently as late 2012, Roma has filed several civil lawsuits against other companies. See Exhibits 29 & 30 to Meyers Dec. In Roma's Complaints, it describes itself as "a New Jersey Corporation." This clearly indicates that Roma is an independent and extant entity.

12

Finally, the Performance Food Group website indicates that Roma is a division of the company. Exhibit 17 to Meyers Dec. The website also shows that Roma has its own executives. Exhibit 19 to Meyers Dec. (at last page). Roma also has its own webpage within the website. Exhibit 20 to Meyers Dec.

Insofar as Roma still exists (as the above evidence suggests), then it is likely that its principal place of business is still in New Jersey, as its most recent corporate filings indicate. See Exhibit 27 to Meyers Dec. (the most recent annual report indicates New Jersey addresses for both Roma's principal business address and main business address). Notably, its main business address is 1 Roma Blvd., Piscataway, NJ 08854. *Ibid.* Current map records indicate that the street is still named Roma Blvd – thus, indicating a very real presence by Roma at that New Jersey address. Exhibit 28 to Meyers Dec. Notably, this address is the same address that Roma attributed to itself in the two late 2012 lawsuits that it filed. *See* Exhibits 29 & 30 to Meyers Dec.

In sum, Roma acts like, in substance, a separate entity from the other defendants, and appears to have its nerve center in New Jersey. Therefore, Roma, in substance, surely is an independent entity that is a New Jersey citizen.

## V.    IF THE COURT DECLINES TO REMAND NOW, THEN PLAINTIFFS ARE ENTITLED TO DISCOVERY

Remand is proper due to the fatal flaws in the Notice of Removal, especially in light of Defendants' failure to present sufficient evidence to establish subject matter jurisdiction. However, if the Court believes that additional information is necessary in order to reach a decision, Plaintiffs respectfully request a short period to conduct factual discovery related to these issues. *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)

13

("plaintiffs have the right, through appropriate discovery, to explore the facts relevant to the court's jurisdiction as the case progresses"); *see also, Ilan-Gat Engineers, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 239 (D.C. Cir. 1981) ("[C]ourts always have jurisdiction to determine their jurisdiction."); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978) (noting that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues").

In that event, Plaintiffs respectfully request that the Court set this matter for an evidentiary hearing to explore the Defendants' tangled corporate infrastructure, as compared with the assertions by defense counsel in the removal papers, which presents a confusing and contradictory state of affairs with respect to the true nature of the alleged separateness of each entity.   Similarly, the Plaintiffs respectfully request that they be permitted to analyze documents and data pertaining to its allegations concerning the amount of hours worked by each individual plaintiff, which would include manifests, log books, pre-inspection and post-inspection reports, and GPS and Mobilecast data to establish the amount in controversy.

## VI.   DEFENDANTS' IMPROPER REMOVAL JUSTIFIES AN AWARD OF PLAINTIFFS ATTORNEY'S FEES AND COSTS

Lastly, the Plaintiffs respectfully request that this Court award attorney's fees due to the unreasonableness of the removal petition. The statute governing procedure after removal provides: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The statute allows the Court to require payment of costs and fees by a party who removed a subsequently-remanded case. *Mints v. Educational Testing Service*, 99 F.3d 1253, 1258 (3d Cir. 1996); *see also Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993).

14

Although the award of fees on a remand is left to the Court's discretion, the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under section 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711 (2005).

Here, Plaintiffs submit that there was no "objectively reasonable basis" for the Defendants to remove this case because the parties are not diverse citizens. Given the serious discrepancies between Defendants' assertions in their removal papers and what Performance Food Group put in its 2014 annual report to the State of New Jersey about its principal place of business in New Jersey, as well as the recent filing in the Eastern District of Louisiana stating that Roma is a New Jersey Corporation and the two lawsuits that Roma filed in 2012 in New Jersey state court, Plaintiffs submit that Defendants lacked an objectively reasonable basis for removal.

Accordingly, the Court should award reasonable attorney's fees and costs to Plaintiffs, given the lack of an "objectively reasonable basis" for removal. *Martin*, 546 U.S. 132.

## CONCLUSION

Based on the foregoing, the Plaintiffs respectfully request that this Court: (i) remand this case to the Superior Court of New Jersey or Order limited discovery and hold a fact-finding hearing to determine whether subject matter jurisdiction exists; and (ii) award reasonable attorney's fees and costs to plaintiffs.

**PARIS ACKERMAN & SCHMIERER LLP**

*s/ Ross H. Schmierer*
Ross H. Schmierer
Bryan H. Mintz

15

103 Eisenhower Parkway
Roseland, New Jersey 07068
T: (973) 228-6667
F: (973) 629-1246
Email:  ross@paslawfirm.com
         bryan@paslawfirm.com

**MEYERS FRIED-GRODIN LLP**

s/ Jonathan Meyers
Jonathan Meyers, Esq.
520 Speedwell Avenue, Suite 210
Morris Plains, NJ 07950
Phone (973) 944-8069
Fax (973) 539-0613

*Attorneys for Plaintiffs*

16