**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BYATA WILDER, FRANK RIZZO, AND ELIO IPPO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROMA FOOD ENTERPRISES, INC.; ROMA OF NEW JERSEY; PERFORMANCE TRANSPORTATION, LLC d/b/a PERFORMANCE FOOD GROUP; PERFORMANCE FOODSERVICE – AFI; VISTAR CORPORATION; JOHN DOES 1-10, fictitious names for persons or entities whose present roles and identities are unknown; and ABC BUSINESS ENTITIES 1-10, fictitious names for entities whose present roles and identities are unknown,<br><br>Defendants. | Civil Action No. 2:14-8123 (JLL) (JAD)<br><br><br>REPORT AND RECOMMENDATION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Plaintiffs Byata Wilder ("Plaintiff Wilder"), Frank Rizzo ("Plaintiff Rizzo"), and Elio Ippolito's ("Plaintiff Ippolito") (collectively "Plaintiffs") Motion to Remand this action to the New Jersey Superior Court, pursuant to 28 U.S.C. § 1447. (ECF No. 10). The Honorable Jose L. Linares, U.S.D.J. referred Plaintiffs' Motion to this Court

1

for a Report and Recommendation. Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiffs' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, this Court recommends that Plaintiffs' Motion be **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

This action involves various state law claims against Defendants Roma Food Enterprises ("Roma"), Roma of New Jersey ("Roma NJ"), Performance Transportation, LLC ("Performance Transportation"), Performance Food Group ("PFG"), Performance Foodservice - AFI ("Performance - AFI") and Vistar Corporation ("Vistar") (collectively "Defendants").[1] (ECF No. 1). Plaintiffs initiated this action by filing a Summons and Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, on October 3, 2014.[2] (ECF No. 1, Ex. A). On December 30, 2014, Defendants removed the case to this Court contending that the Court had original subject matter jurisdiction, specifically diversity jurisdiction, and that removal was, therefore, appropriate pursuant to 28 U.S.C. § 1441. (ECF No. 1, ¶¶ 7, 9).

On January 29, 2015, Plaintiffs moved to remand this case to the New Jersey Superior Court, arguing that removal was improper because the Defendants lacked complete diversity and the amount in controversy did not exceed the requisite $75,000. (ECF No. 10-1, at 3-4). Defendants opposed Plaintiffs' Motion to Remand on February 20, 2015, arguing that each of

---

[1] Defendants maintain that "Plaintiffs' First Amended Complaint identifies three (3) non-existent defendants: (1) Roma Food Enterprises, Inc.; (2) Roma of New Jersey; and (3) Performance FoodService – AFI. PFG, although not named in the First Amended Complaint was formerly known as Vistar Corporation until November 9, 2010." (ECF No. 15, at 8-9).
[2] Plaintiffs brought their Complaint as a class action, but have not yet certified the class, which Plaintiffs expect to exceed 100 persons. (ECF No. 1, ¶¶ 23, 24, 26).

Plaintiffs' claim is well above $75,000 and that each of the Defendants were incorporated and maintain primary places of business outside of New Jersey. (ECF No. 15, at 1-2).

Plaintiffs filed a reply to Defendants' Opposition on February 27, 2015, contending that Defendants' calculations as to amount in controversy were unsubstantiated and "patently absurd" and Defendants' "math led to unbelievable results." (ECF No. 16, at 8-9). Plaintiffs further assert that at least one Defendant, either Roma, PFG, or Performance Foodservice, is a citizen of New Jersey. (Id. at 11-13).

## II. LEGAL STANDARD – REMOVAL AND REMAND

### a. Removal and Remand

Section 1441(a) of Title 28 allows removal of a civil action from state court to federal court if the federal court has original subject matter jurisdiction over the action. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). A federal district court has original subject matter jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). This is known as "diversity jurisdiction." An action can be removed on the basis of diversity jurisdiction only "if there is a complete diversity between all named plaintiffs and defendants, and no defendant is a citizen of the forum State." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005). These requirements are commonly referred to as "complete diversity." Complete diversity prohibits removal if a plaintiff and any defendant are citizens of the same state. Kaufman v. Allstate N.J. Insur. Co., 561 F.3d 144, 148 (3d Cir. 2009). The party seeking removal bears the burden of demonstrating that removal is proper. Frederico, 507 F.3d at 193.

Procedurally, a removing defendant must comply with a requirement set forth in 28 U.S.C. § 1446(b)(1), which obliges a removing defendant to file a notice of removal within thirty days of

service of a summons and compliant. Di Loreto v. Costigan, 351 F. App'x 747, 751 (3d Cir. 2009). Courts then interpret removal statutes strictly, resolving all doubts "in favor of remand." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

### b. **Diversity of Citizenship**

28 U.S.C. § 1332(a) governs the court's jurisdiction based on diversity of citizenship and provides, in pertinent part: "(1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(a). Previously, courts used the "business activities test" to determine a corporation's primary place of business, which evaluated the amount of business conducted in each business location. Hertz Corp. v. Friend, 559 U.S. 77, 79 (2010). The business activities test was replaced by the "nerve center" test. Id. A corporation's principal place of business refers to a singular "place," the corporation's headquarters where central direction originates over other corporate locations that may exist in other states. Id. Essentially, a corporation's principal place of business refers to a company's "nerve center," where the "actual center of direction, control, and coordination" takes place. Id. at 80.

The citizenship of unincorporated entities, such as a limited liability company, is determined by the citizenship of its members. Carden v. Arkoma Associates, 494 U.S. 185, 195-96 (1990) ("diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members, the several persons composing such association, each of its members") (internal citations and quotations omitted); see also Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) ("the citizenship of an LLC is determined by the citizenship of each of its members").

If removal of a case is based on diversity jurisdiction, diversity needs to exist "at the time the complaint was filed . . . and at the time of removal" and the "the burden is on the removing party to establish federal jurisdiction." Johnson v. Smithkline Beecham Corp., 724 F.3d 337, 346 (3d Cir. 2013) (internal citations omitted).  If the opposing party challenges removal, thereby asserting that diversity does not exist, that party must support its factual allegations "by competent proof." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189-90 (1936).

### c. Amount in Controversy

The Third Circuit analyzed the burden of proof in a removal and remand scenario in Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392 (3d Cir. 2004).  There, the Third Circuit explained that when facts as to jurisdiction are in dispute, a preponderance of the evidence standard is used to resolve that dispute. Id. at 398.  Once that dispute is resolved, the Court should apply the legal certainty test, as defined by the United States Supreme Court in St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938). Faltaous v. Johnson & Johnson, 2007 U.S. Dist. LEXIS 99473, *10 (D.N.J. Oct. 11, 2007).  In Red Cab, the Supreme Court found the following:

> The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal . . . if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

Red Cab Co., 303 U.S. at 288-89 (emphasis added).  Additionally, the Court noted that "if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount [in controversy], removal will be futile and remand will follow. Id. at 292.

If, however, "the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum . . . the case must be remanded if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount." Frederico v. Home Depot, 507 F.3d 188, 197 (3d Cir. 2007). When a complaint does not contain the amount of damages sought, "the Court will consider the complaint, the notice of removal, and the submissions related to plaintiff's motion to remand" to determine the amount in controversy. Faltaous, 2007 U.S. Dist. LEXIS at *18. It is important to note in cases removed from state court that New Jersey Court Rule 4:5-2 states that pleadings may demand unliquidated damages generally, without specifying amounts. New Jersey Court Rules, 4:5-2.[3] A defendant's estimates of what a plaintiff may recover "must be realistic . . . not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." Samuel-Bassett, 357 F.3d at 403.

### III. ANALYSIS

#### a. Complete Diversity

The facts as to Defendants' citizenship are in dispute. As stated above, when the facts as to jurisdiction are in dispute, a preponderance of the evidence standard is used to resolve the dispute. Samuel-Bassett, 357 F.3d at 398. Plaintiffs argue that Defendants, in the Notice of Removal, "rely upon the conclusory statements of their legal counsel to support their factual assertions that all of the Defendants are citizens of other states." (ECF No. 10-1, at 11). Plaintiffs argue that diversity does not exist because Performance Foodservice and Roma are both citizens of New Jersey. (ECF No. 10-1). Defendants replied asserting that Performance Foodservice no

---

[3] In compliance with New Jersey Court Rule 4:5-2, Plaintiffs in this case did not specify the damages sought in their Complaint.

6

longer exists, and that the citizenship of the existing Defendants, PFG and Performance Transportation, are outside of New Jersey. (ECF No. 15, at 17-21). Plaintiffs refute Defendants' claim, stating that public filings contradict Defendants' assertions with regard to the citizenship of these Defendants. (ECF No. 16, at 11-12). The Court shall address each of these Defendants' citizenship in detail below.

### i. **Defendant PFG**

Defendants' state that PFG is a "corporation duly created and organized under the laws of the State of Colorado, with its principal place of business in Richmond, Virginia." (ECF No. 15, at 18). Plaintiffs argue that PFG's New Jersey Business Entity Status Report, filed on September 28, 2014, lists its principal business address as 301 Heron Drive, Swedesboro, NJ 08085. (ECF No. 10-24, at 2). As mentioned above, the test to determine a corporation's primary place of business is the "nerve center" test, which specifically looks to where the company's operations are directed. Hertz, 559 U.S. at 80. It appears as though PFG's nerve center is in Virginia.

Defendants note that the "Chief Executive Officer, Chief Financial Officer, Executive Vice President of Operations, General Counsel, Chief Information Officer, Chief Human Resources Officer, and other high-level officers" of PFG work, on a daily basis, in Richmond, Virginia. (ECF No. 15, at 18). Defendants further indicate that PFG also employs "Regional Vice Presidents, Presidents, Marketing Directors, Accounting Directors, Human Resources Directors, etc., of operating divisions at approximately thirty-four (34) other locations throughout the United States." (Id.). Defendants also maintain that Plaintiffs' citations to prior pleadings and online profiles for their assertion that PFG has its principal place of business in New Jersey is misplaced. (Id. at 20). Specifically, with regard to the New Jersey address that Plaintiffs cite, Defendants argue that New

7

Jersey law "requires an employer with locations in New Jersey [to] maintain such employment records within the State." (Id.) (citing N.J.A.C. § 12:56-4.5).

Notably, a corporation's nerve center is "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination, i.e. the 'nerve center,' and not simply an office where the corporation holds its board meetings..." Hertz, 559 U.S. at 76. While Plaintiffs raise valid concerns as to PFG's citizenship, a corporation's principal place of business is only one state. As such, given PFG's thirty-three (33) other locations, presumably identical to its New Jersey office, it appears as though PFG's nerve center is Virginia.

### ii. Defendant Performance Transportation

Defendants' Notice of Removal states that Performance Transportation is "a corporation duly created and organized under the laws of Delaware with a principal place of business in Richmond, Virginia." (ECF No. 1, at 4). Plaintiffs do not address this entity in their Motion to Remand, (see generally ECF No. 10-1), thereby leaving Defendants' assertions uncontested. This Court, therefore, need not address this entity's citizenship.

### iii. Defendant Roma

Defendants' Notice of Removal states that "Roma Food Enterprise does not exist." (ECF No. 1, at 2, n.1). Plaintiffs argue, however, that Roma does in fact exist and is a New Jersey corporation, as is evidenced by court filings in 2011 and 2012. (ECF No. 15, at 16-17). Additionally, Plaintiffs argue that PFG's website "indicates that Roma is a division of the company. The website also shows that Roma has its own executives." (Id. at 17). Defendants on the other hand, argue that Roma was acquired by PFG and is "not a corporate entity." (ECF No.

15, at 9). More specifically, Defendants note that the only two entities that exist are Performance Transportation, which Plaintiffs fail to address the citizenship of, and PFG. (ECF No. 15, at 7). "The remaining entities named in the First Amended Complaint . . . either no longer exist or exist only as alternate names (i.e., a 'd/b/a') for PFG." (Id.).

Plaintiffs' arguments concerning Defendant Roma's principal place of business are undermined by law in this Circuit which cautions courts to disregard statements made in separate litigations. See Mennen Co. v. Atl. Mut. Ins. Co., 147 F.3d 287, 293-94 (3d Cir. 1998) (holding that a party's prior pleadings do not have evidentiary value for the purpose of assessing where that party's principal place of business is located. Representations made in prior pleadings "run contrary to the empirical facts with which the jurisdictional inquiry is concerned . . . it is axiomatic that a party may not confer or defeat jurisdiction by mere pleading . . . Rather, subject matter jurisdiction depends upon facts of record, and when any question arises as to the existence of jurisdiction a federal court is obligated to make an independent determination of those facts") (internal citations omitted). While it appears that there is diversity among the parties, the Court need not resolve this issue as Defendants have not established the requisite amount in controversy. As a result, jurisdiction fails.

### b. Amount in Controversy

Defendants have not met their burden in establishing that the amount in controversy exceeds $75,000, to a legal certainty. "A district court's determination as to the amount in controversy must be based on the 'plaintiff's complaint at the time the petition for removal was filed.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002) (citing Steel Valley Auth. v. Union Switch Div., 809 F.2d 1006, 1010 (3d Cir. 1987)). Here, the face of the complaint does not specify the amount of damages sought. In New Jersey state court, pleadings are not required

to contain a demand for a specific amount of damages. N.J. Court Rule 4:5-2. Thus, the Court looks to the other related filings to determine the amount in controversy. See Faltaous, 2007 U.S. Dist. LEXIS at *18.

Defendants' calculations are based on each Plaintiffs' W-2 dating back six (6) years.[4] (ECF No. 15, at 12). First, Defendants set forth each Plaintiffs' income, then their "average weekly hours worked by each Plaintiff necessary to support the minimum wage violation claims asserted in the First Amended Complaint," and finally, Defendants list each Plaintiffs' potential damages. Defendants arrived at the "average weekly hours worked by each Plaintiff necessary to support the minimum wage violation claims asserted" by dividing the W-2 income by 52 workweeks which resulted in an average weekly income for each Plaintiff. Defendants then divided the average weekly income by the applicable minimum wage of $7.25. (ECF No. 15, at 12, n.3). To support its analysis, Defendants maintain that Plaintiff Ippolito, for instance, worked an average of 167 hours per week in 2013. Working 167 hours per week would require Plaintiff Ippolito to have worked 23.86 hours a day, 7 days a week. Given the unlikelihood of Plaintiff Ippolito working 23.86 hours per day, for 7 days a week for the entire year, the remaining calculations are either suspect, unduly complex, and/or speculative. The analysis certainly does not allow the Court to conclude to a legal certainty that the jurisdictional requirement has been met.

This Court also notes that Defendants are in the best position to know the actual hours worked by each Plaintiff. Defendants, however, did not use that information in calculating the amount in controversy, which would have presumably led to a more accurate assessment in determining whether or not this Court has subject matter jurisdiction. For these reasons, this Court

---

[4] Defendants note that "[s]ince Plaintiffs seek to recover alleged unpaid minimum wages and overtime pursuant to the covenant of good-faith and fair dealing theory, the applicable statute of limitations is six (6) years." (ECF No. 15, at 12).

finds that Defendants have failed to meet their burdening in establishing that the amount in controversy exceeds $75,000.

### c. Attorney Fees

Plaintiffs request that this Court award attorney fees and argue that Defendants had no "objectively reasonable basis" for removing the case, given the parties "are not diverse citizens." (ECF No. 10-1, at 19). The United States Supreme Court has held that "attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005). The awarding of attorney fees is also optional and at the discretion of the court. Id. This Court declines to recommend an award of attorney fees.

### IV. CONCLUSION

Based on the foregoing, this Court respectfully recommends that Plaintiffs' Motion to Remand, (ECF No. 10), be **GRANTED** and remand this matter to the Superior Court of New Jersey, Law Division, Middlesex County pursuant to 28 U.S.C. § 1447.

JOSEPH A. DICKSON, U.S.M.J.

cc:   Hon. Jose L. Linares, U.S.D.J.